UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| LILLIE FOX and | ) | | |
| ANGELA VEROL WILLIAMS, | ) | | |
| | ) | | |
| Plaintiffs/Counter-Defendants, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:06-CV-87 |
| | ) | | (VARLAN/GUYTON) |
| HSBC MORTGAGE SERVICES, INC., | ) | | |
| | ) | | |
| Defendant/Counter-Plaintiff. | ) | | |

## **MEMORANDUM OPINION**

This is a breach of agreement action between Defendant/Counter-Plaintiff HSBC Mortgage Services, Inc. ("Counter-Plaintiff HSBC") and Plaintiffs/Counter-Defendants Lillie Fox ("Ms. Fox") and Angela Verol Williams ("Ms. Williams") (hereinafter collectively referred to as "the Counter-Defendants").[1] The case is before the Court for a decision on the merits following a one-day bench trial that took place on March 24, 2009. Counter-Plaintiff HSBC seeks damages for the alleged breach of agreement in addition to other costs and attorney fees.

After giving careful consideration to the testimony of witnesses at trial, the exhibits introduced at trial, the proposed findings of fact and conclusions of law [Doc. 55], and the

---

[1] The Counter-Defendants represent themselves *pro se*.

applicable law, the Court makes the following findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a).[2]

I. **Findings of Fact**

1. On September 2, 2004, Counter-Defendants Fox and Williams, conveyed their interest in the property located at 1055 Tramel Road, Sevierville, Tennessee 37862, to Mortgage Electronic Registration Systems, Inc., acting solely as nominee of the Lender, Ameritrust Mortgage Company, LLC, ("Ameritrust") under a Deed of Trust as security for performance of an Adjustable Rate Note ("Note") of the same date. [Doc. 45 at 4.]

2. The Note evidences a promise to pay $112,320.00, plus interest, which interest rate varied under the terms of the Adjustable Rate Note, to the Lender in monthly installments. [*Id.*]

3. Pursuant to the Note, Counter-Defendants agreed to make monthly payments from October 2, 2004, through September 2, 2034, the initial amount of which was $883.62. [*Id.*]

4. On January 14, 2005, the Note and Deed of Trust were assigned to Counter-Plaintiff HSBC by Ameritrust. [*Id.*]

5. This assignment of the Note and Deed of Trust was proper under the terms of said agreements. Counter-Plaintiff HSBC is the true owner and holder of the Note pursuant to which this counterclaim arises. [*Id.*]

---

[2] The Court notes that there are three pending Motions in Limine in this case. [Docs. 39, 40, 41.] While the Court noted at the start of trial that it would address the substance of these motions during the course of trial, the Court clarifies that the remaining motions in limine [Docs. 39, 40, 41] were denied as moot.

6. In a section entitled "Borrower's Failure to Pay as Required," the Note states:

> (A) Late Charges for Overdue Payments
> If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
>
> (B) Default
> If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
>
> (C) Notice of Default
> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
>
> (D) No Waiver by Note Holder
> Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
>
> (E) Payment of Note Holder's Costs and Expenses
> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

[D. Ex. 1.]

7. Counter-Defendants Fox and Williams failed to make the required monthly payment due in December of 2004. They also only made part of the required monthly payment due in March of 2005. As a result, Counter-Defendants were "in default" under the terms of the

3

Note, and Counter-Plaintiff HSBC proceeded with acceleration of the remaining amount owed and foreclosure. [D. Ex. 4; Testimony of Ms. Fox; Testimony of Bill Gonzalez ("Mr. Gonzalez").]

8. After August of 2005, Counter-Plaintiff HSBC did not process any further monthly payments from Counter-Defendants. [D. Ex. 3.]

9. In October of 2005, Counter-Plaintiff HSBC instituted foreclosure proceedings pursuant to the Note and Deed of Trust. [Testimony of Mr. Gonzalez.]

10. In a letter from Counter-Plaintiff HSBC dated October 18, 2005, Counter-Defendants were informed of possible alternatives to foreclosure. One option was "Reinstatement of your loan: You would pay the total amount past due in one lump sum." [P. Collective Ex. 1; Testimony of Ms. Fox.]

11. In the section entitled "Borrower's Right to Reinstate After Acceleration," the Deed of Trust states:

> If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued . . . . Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorney's fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.

[D. Ex. 2.]

12. During this period, Mr. Gonzalez was employed by Counter-Plaintiff HSBC as a "senior loss mitigation analyst." As part of his job duties, Mr. Gonzalez spoke with Ms. Fox about the possible alternatives to foreclosure, including the option of reinstatement of the loan in October and November of 2005. However, these discussions were ultimately unsuccessful in finding an agreeable alternative to foreclosure after Counter-Defendants did not have funds to pay for attorneys' fees in addition to the amount due on the mortgage. [Testimony of Mr. Gonzalez; Testimony of Ms. Fox; Testimony of Amanda Cramer ("Ms. Cramer").]

13. The property at issue was then sold at a foreclosure sale, but a deficiency remained in the amount of $10,218.10. [Testimony of Mr. Gonzalez.]

14. Additionally, the Note provides that "I will pay interest at a yearly rate of 8.750%" and that "[t]he interest required by . . . this Note is the rate I will pay both before and after any default described in Section 7(b) of this Note." [D. Ex. 1.] Using this rate, the amount of deficiency, including prejudgment interest, is $13,117.45. [Testimony of Mr. Gonzalez.]

## II. Conclusions of Law

1. Under Tennessee law, recovery for the deficiency or balance due on a Note is a matter of legal right upon the contract of the parties. *Brown v. P'Pool*, 166 S.W.2d 633, 635 (Tenn. Ct. App. 1942). In the present case, the parties have stipulated to the valid execution of the Note and Deed of Trust between Counter-Defendants and Ameritrust. [Doc. 45.] They have also stipulated that this agreement was later validly assigned to Counter-Plaintiff HSBC. [Doc. 45.] The Note expressly states that "[i]f I do not pay the full amount of each monthly

payment on the date it is due, I will be in default." [D. Ex. 1.] Counter-Defendants failed to make the required monthly payment due in December of 2004 and partial payment due in March of 2005. Thus, the Court finds that Counter-Plaintiff HSBC has satisfied its prima facie burden of establishing a valid agreement that was breached by Counter-Defendants.

2.   At trial, Counter-Defendants contended that Counter-Plaintiff HSBC cannot claim relief because the original agreements were made with Ameritrust, not Counter-Plaintiff HSBC. However, the Note expressly states:

> I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

[D. Ex. 1.] In signing the Note, Counter-Defendants agreed to permitting transfer of the Note to others, including Counter-Plaintiff HSBC. Furthermore, the parties have stipulated that the Note and Deed of Trust were assigned to Counter-Plaintiff HSBC by Ameritrust and that the assignment was proper under the terms of the agreements. [Doc. 45.] Therefore, Counter-Defendants' argument that there was no breach of agreement because the original agreement was made with Ameritrust is without merit.

3.   Counter-Defendants have also raised the affirmative defense of dirty or unclean hands in this case. *See Towe Iron Works, Inc. v. Towe*, 243 S.W.3d 562, 564 (Tenn. Ct. App. 2007) (recognizing "unclean hands" as an affirmative defense to a breach of agreement claim). Because Counter-Defendants raise the defense of unclean hands, they bear the burden of proof of establishing this affirmative defense. *See Cloyd v. Hartco Flooring Co.*, 274 S.W.3d

6

638, 647 (Tenn. 2008) (discussing the burden of proof for an affirmative defense in the context of a statute of limitations argument).

At trial, Counter-Defendants raised the following arguments based on the affirmative defense of unclean hands: (1) Counter-Plaintiff HSBC's failure to reinstate the loan after Counter-Defendants' conversations with Mr. Gonzalez; (2) Counter-Plaintiff HSBC's failure to pay taxes on the subject property; and (3) Counter-Plaintiff HSBC's failure to arbitrate this matter.

4. To the extent Counter-Defendants relies on Counter-Plaintiff HSBC's failure to reinstate the loan, the Court first notes the conditional language employed throughout the letter from Counter-Plaintiff HSBC describing possible alternatives to foreclosure. [P. Collective Ex. 1.] The letter only states that "you *may* be eligible for certain opportunities" and emphasizes that the "foreclosure action will continue until HSBC Mortgage Services can determine if you are eligible for one of these alternatives and there is an agreement between you and HSBC Mortgage Services." [P. Collective Exhibit 1.] Thus, the letter in and of itself fails to establish that Counter-Plaintiff HSBC had an obligation to reinstate the loan.

Second, Counter-Defendants did not meet the requirements for reinstatement after acceleration, as provided in the Deed of Trust. [D. Ex. 2.] Counter-Defendant Fox testified that she had gathered enough money to cover the amount owed on the mortgage for purposes of reinstating the loan in November of 2005 and informed Mr. Gonzalez of this, but she also admitted that she did not have enough money to also pay attorneys' fees at that time. [Testimony of Counter-Defendant Fox.] Though Counter-Defendants argue that Mr.

7

Gonzalez failed to inform them previously of the necessity to pay attorneys' fees when discussing the reinstatement option over the telephone, the Court notes that the Deed of Trust expressly provides "certain conditions" that a Borrower must satisfy for reinstatement after acceleration. One condition is that the Borrower "pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees . . . ." [D. Ex. 2.] Thus, even if Mr. Gonzalez had not expressly informed Counter-Defendants about the condition of paying attorneys' fees as Counter-Defendants argue, such notice was expressly provided by the Deed of Trust. As a result, the Court finds that Counter-Defendants have failed to meet their burden of establishing unclean hands based on the failure of Counter-Plaintiff HSBC to reinstate the loan.

5. For their unclean hands defense, Counter-Defendants also argued during closing statement that Counter-Plaintiff HSBC has failed to pay taxes on the subject property subsequent to foreclosure. As an initial matter, the Court notes that Counter-Defendants first referred to this issue in their closing argument and did not previously present proof on this issue. Though Counter-Defendants submitted tax-related documents after their closing statement [P. Collective Ex. 3], the Court questions the propriety of considering such an argument when Counter-Plaintiff HSBC did not have the opportunity to present evidence on the issue during trial.

Nevertheless, even if the Court were to consider the argument, the Tennessee Supreme Court has recognized that the affirmative defense of unclean hands "is confined to misconduct connected with the particular matter in litigation, and does not extend to any

8

misconduct, however gross, which is unconnected therewith, and with which the defendant is not concerned." *Overton v. Lewis*, 279 S.W. 801, 803 (Tenn. 1926) (citation omitted). In other words, "[it] must relate directly to the very transaction concerning which complaint is made." *Id.* at 804 (citation omitted). In the present case, the alleged non-payment of taxes by Counter-Defendant HSBC subsequent to foreclosure lacks the necessary relationship to the subject transaction in this matter. As a result, this argument, even if properly before the Court, would be unavailing for Counter-Defendants.

6. Finally, Counter-Defendants raised the issue of Counter-Plaintiff HSBC's failure to arbitrate this matter in support of their unclean hands argument during their closing statement. Because the issue of arbitration was first raised during Counter-Defendants' closing statement, the Court again questions the propriety of considering the substance of this argument since Counter-Plaintiff HSBC did not have the opportunity to address the issue at trial. However, even if the Court did consider the argument, the Court finds these alleged actions are insufficiently related to the transaction at issue in this matter. *See Overton*, 279 S.W. at 804. Accordingly, Counter-Defendants cannot prevail with this argument even if it were considered by the Court.

7. Accordingly, the Court finds that Counter-Defendants have failed to establish by a preponderance of the evidence the affirmative defense of unclean hands and have otherwise failed to overcome Counter-Plaintiff HSBC's prima facie showing of breach of agreement.

8. When "no irregularity in the sale is raised, the presumption is that the price brought at the public sale is the cash market price for the property." *Duke v. Daniels*, 660 S.W.2d

9

793, 795 (Tenn. Ct. App. 1983). In the present case, Counter-Defendants have not challenged this presumption. Thus, the Court finds that the property was sold at foreclosure for its fair market value and that the amount of deficiency between the amount owed and the fair market value is $10,218.10. Additionally, the Note provides that "I will pay interest at a yearly rate of 8.750%" and that "[t]he interest required by . . . this Note is the rate I will pay both before and after any default described in Section 7(b) of this Note." [D. Ex. 1.] Using this rate, the amount of deficiency including prejudgment interest is $13,117.45. To the extent Counter-Plaintiff HSBC also seeks attorneys' fees based on the agreements of the parties, the Court will allow Counter-Plaintiff HSBC to submit a motion and supporting documentation as provided by Fed. R. Civ. P. 54(d)(2).

## III. CONCLUSION

In summary, the Court finds that Counter-Plaintiff HSBC has proved by a preponderance of the evidence that Counter-Defendants breached the Note and Deed of Trust. Counter-Defendants have failed to establish their affirmative defense of unclean hands. Based upon the foregoing findings of fact and conclusions of law, the Court will find in favor of Counter-Plaintiff HSBC in the amount of $13,117.45.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE